MICHAEL F. SCHULTZ *et al.*, Plaintiffs-Appellees, v. TIMOTHY G. GOTLUND *et al.*, Defendants-Appellees (Loretto Hospital, Intervening Petitioner-Appellant).

First District (3rd Division)   No. 1—88—0378

Opinion filed June 28, 1989.

Hayt, Hayt & Landau, of Evanston (Eric S. Lundahl, of counsel), for appellant.

Joseph L. Goldberg, of Chicago, for appellees Michael F. Schultz and Joyce J. Schultz.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

On June 9, 1986, plaintiffs, Michael and Joyce Schultz, filed suit to recover for, *inter alia*, personal injuries sustained when Michael was struck by a car driven by defendant Timothy Gotlund and owned by defendant Richard Gotlund. The accident occurred after Michael, in a state of intoxication, left defendant Guy's Steak House, Ltd., which was owned by defendant DDB Investors, Inc. Thereafter, petitioner, Loretto Hospital, which had paid $60,885.19 in medical expenses for Michael under an employee group health insurance policy issued to Joyce, filed a petition to intervene in the action under section 2—408 of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—408). Petitioner appeals the trial court's denial of the petition.

In attempting to intervene in plaintiffs' action, petitioner relied on the common-law right of subrogation since the group insurance policy it issued to Joyce did not contain an express subrogation provision. In denying the petition, the trial court ruled that, petitioner having failed to expressly contract for a right of subrogation, it would not imply such a term in the policy. Upon petitioner's motion, the trial court found that there was no just reason to delay enforcement or appeal of its order, as provided in Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)). See *Chicago, Milwaukee, St. Paul & Pacific R.R. Co. v. Harris Trust & Savings Bank* (1978), 63 Ill. App. 3d 1012, 380

N.E.2d 835.

On appeal, petitioner contends that it is entitled to intervene in plaintiff's action under either section 2—408(a)(2) or 2—408(b)(2) of the Civil Practice Law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—408.) Petitioner predicates its argument on the ground that it has a common-law right to subrogation to plaintiffs' rights against defendants to the extent of the hospital and medical bills it paid for Michael as beneficiary of the policy issued to Joyce. In support, petitioner cites *Geneva Construction Co. v. Martin Transfer & Storage Co.* (1954), 4 Ill. 2d 273, 122 N.E.2d 540, and *Dworak v. Tempel* (1959), 17 Ill. 2d 181, 161 N.E.2d 258. Plaintiffs contend that petitioner is not entitled to intervene in their action under either provision because it does not have a common-law right of subrogation to their rights against defendants.

Section 2—408(a)(2) allows intervention, as a matter of right, upon timely application when representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action. Section 2—408(b)(2) provides for permissive intervention upon timely application when the applicant's claim or defense and the main action have a question of law or fact in common. We find that, if defendants do have a common-law right of subrogation here, they would be entitled to intervene in plaintiffs' action as a matter of right under section 2—408(a)(2).[1] We thus turn to the dispositive issue.

Prior to the decision in *Geneva Construction Co.*, the portion of the Workmen's Compensation Act subrogating employers who, under the Act, compensated employees injured by certain third parties to the employees' rights against such parties was declared unconstitutional. The court in *Geneva Construction Co.* held that employers nevertheless had a common-law right of subrogation to the employees' rights against such third parties.

Plaintiffs attempt to distinguish *Geneva Construction Co.* on several grounds. They first assert that it involved a statutory right of subrogation and that a chief concern therein was the double recovery an employee would realize if his employer had no right of subrogation to his rights against the third-party tortfeasor. Here, in contrast, they argue, it would be difficult or impossible to separate any recovery by them into its various components because they seek to recover for

---

[1] As to the timeliness of petitioner's application, it asserts, and the record reflects, that it was made when discovery between the parties was ongoing. We will thus assume from that fact that plaintiffs had not settled with defendants Timothy and Richard Gotlund (see below) when the petition was filed.

losses beyond their medical expenses, including Michael's pain and suffering and lost wages and Joyce's loss of consortium. (See *Ridge Tool Co. v. Silva* (1986), 33 Ohio App. 3d 260, 515 N.E.2d 945.) They conclude that double recovery would be a relevant concern here only if the damages they were seeking against defendants were limited to the medical expenses paid by petitioner.

*Dworak* held that an insurer, which had indemnified an insured for property damage caused by a collision with an intoxicated driver, had a right of subrogation under the Liquor Control Act to the rights of its insured against the tortfeasor, notwithstanding that it did not have a claim in its own right under the Act against the tortfeasor.

Plaintiffs distinguish *Dworak* simply on the ground that, while courts routinely find a right of subrogation under property and casualty insurance policies (3 J. Appleman & J. Appleman, Insurance Law & Practice §1675, at 495 (1967 & Supp. 1988)), they have not implied such a right in the area of personal insurance, which includes medical expense benefits (*Frost v. Porter Leasing Corp.* (1982), 386 Mass. 425, 436 N.E.2d 387).

We agree with plaintiffs that *Geneva Construction Co.* and *Dworak* are distinguishable on their facts. However, we cannot agree that the reasoning of our supreme court therein does not support or, more importantly, require the recognition of a right of subrogation in petitioner, regardless what other jurisdictions have concluded on this issue. See generally Annot. 73 A.L.R.3d 1140, §3 (1976 & Supp. 1988).

The *Geneva Construction Co.* case turned on the common-law right of subrogation because the statutory grant of that right had previously been declared unconstitutional. The statutory grant was to employers whose employees had been injured by tortfeasors, who, like defendant, were also subject to the Workmen's Compensation Act.

In finding that employers did not have a common-law right of subrogation under the facts of that case, the supreme court rejected the reasoning of a Federal court that workmen's compensation statutes were analogous to life insurance contracts, under which insurers were denied a common-law right of subrogation. In rejecting that reasoning, the court stated:

> "[I]nasmuch as the object of workmen's compensation acts is in reality to indemnify the injured employee for pecuniary loss sustained, since his average weekly earnings are commonly made the basis on which benefits are computed, the status of the employer is more comparable to that of an insurer in fire and marine policies than under life and accident insurance poli-

cies, which are essentially legally permissible wagers on the duration of life or the happening of an accident. [Citations.] Although the compensation granted under the act may not be full indemnity for every form of injury, neither is the sum paid under a fire or other indemnity policy necessarily full indemnity, since the amount payable is limited by the terms of the policy ***, just as a fire insurance policy may provide against only certain kinds of loss. Furthermore, the fact that the measure of damage may be different in the common-law action and in the claim for compensation should not render the principle of subrogation inapplicable, for the measure of damages in an action on a fire insurance policy may be different from the measure of damages against the tort-feasor who caused the fire, yet subrogation is permitted in those cases. Therefore, if [a] fire or marine insurance company *** is *** subrogated *pro tanto* to the rights of the insured against the tort-feasor, by parity of reasoning, the employer who pays the injured employee compensation should likewise be subrogated *pro tanto* to the rights of the employee against such wrongdoer." *Geneva Construction Co.*, 4 Ill. 2d at 281-82.

■ Pursuant to the reasoning of the court in *Geneva Construction Co.*, we find that the purpose of the medical payments coverage, of petitioner's employee group health insurance policy, is to indemnify the injured employee or other beneficiary from pecuniary loss resulting from the expenses of medical care rather than the payment of a sum certain on the happening of a given event, such as death or accident.

Similarly to this conclusion, it was held in *Damhesel v. Hardware Dealers Mutual Fire Insurance Co.* (1965), 60 Ill. App. 2d 279, 209 N.E.2d 876, that an automobile liability insurance policy providing that the insurer would pay the reasonable medical expenses of insureds up to $500 was an indemnity contract. The court reasoned that the contract was to indemnify insureds for medical expenses rather than pay certain amounts for certain injuries. (*Damhesel*, 60 Ill. App. 2d at 281-82. See also *Bernardini v. Home & Automobile Insurance Co.* (1965), 64 Ill. App. 2d 465, 212 N.E.2d 499.) Moreover, the fact that there was an express subrogation clause in the insurance policy at issue in *Damhesel*, on which plaintiffs rely to distinguish that case, is utterly unavailing. That fact was immaterial to the court's construction of the medical payments provision.

In view of the foregoing, we find the coverage provided plaintiffs by petitioner, like the workmen's compensation involved in *Geneva*

*Construction Co.*, more comparable to that of fire and marine policies, under which there is a right of subrogation, than to life and accident insurance coverage.

Moreover, under the reasoning of *Geneva Construction Co.*, the fact that petitioner may not provide full indemnity for every form of injury is irrelevant. *Geneva Construction Co.* also requires rejection of plaintiff's attempt to defeat petitioner's right of subrogation on the ground that the damages they seek in the common-law action are different from and greater than the recovery sought by petitioner. In this regard, we disagree with plaintiffs that the possibility of a double recovery by them for the medical expenses resulting from defendant's culpable conduct is irrelevant simply because they sought or are seeking other damages. Likewise, we see no logic in their argument that a concern with a double recovery would be relevant here only if the damages they were seeking were limited to the medical expenses paid by petitioner. Ultimately, the reasoning of the court in *Geneva Construction Co.* requires that, like the employer involved therein and the fire and marine insurers to which the court compared it, a provider of medical expenses coverage be subrogated *pro tanto* to the rights of its insured against the tortfeasor whose conduct resulted in the medical expenses the provider paid.

While plaintiffs distinguish *Geneva Construction Co.* and *Dworak* on the facts, they fail to address the language of the supreme court therein regarding the nature and scope of the common-law right of subrogation. It is that language which ultimately reveals that plaintiff's position is untenable. In *Geneva Construction Co.*, the court reasoned that, ultimately, the issue had to be "determined in terms of the essential elements of the doctrine of subrogation[ ]" and then stated:

> "This legal concept originated in equity, but is presently an integral part of the common law, and is designed to place the ultimate responsibility for a loss upon the one on whom in good conscience it ought to fall, and to reimburse the innocent party who is compelled to pay. Under this doctrine, a person who, pursuant to a legal liability, has paid for a loss or injury resulting from the negligence or wrongful act of another, will be subrogated to the rights of the injured person against such wrongdoer. [Citations.]
>
> \* \* \*
>
> In workmen's compensation cases, where the non-negligent employer has been required to pay compensation under the terms of the statute to an employee injured by a third-party

tort-feasor, that loss should fall ultimately upon the wrongdoers responsible for it. If the non-negligent employer is deprived of his right of subrogation, it would result in the unjust enrichment of the employee, who could retain both compensation and damages, thereby violating a basic tenet of the common law that there may not be a double satisfaction for the same wrong. \*\*\* If the employer is allowed a right of subrogation, all parties will have been duly paid, no one paid twice or imposed with double liability, and the loss will fall upon the only party at fault, in accordance with the equitable objectives of the doctrine." *Geneva Construction Co.*, 4 Ill. 2d at 283-84.

Like the *Geneva Construction Co.* court's recognition of an employer's right of subrogation under the common law at a time when the employer had no valid statutory right thereto, the recognition of the same right in a provider of medical expenses coverage under an employee group health insurance, not providing therefor, ensures that the loss falls ultimately on the party responsible for it, and that no one will receive a double recovery or be subjected to a double liability, all in accordance with the equitable objectives of the doctrine.

In *Dworak*, the supreme court approved the appellate court's recognition, in an earlier case, of an insurer's right of subrogation under the Liquor Control Act by stating:

"That interpretation and approach is clearly consistent with the policy of this court to apply the expanding doctrine of subrogation, which originated in equity, and is now an integral part of the common law, in all cases where its essential elements are present, and where it effectuates a just resolution of the rights of the parties, irrespective of whether the doctrine has previously been invoked in the particular situation." *Dworak v. Tempel* (1959), 17 Ill. 2d 181, 190, 161 N.E.2d 258.

As in *Dworak*, we believe that the recognition of a common-law right of subrogation in a provider of medical expense coverage under an employee group health insurance policy is consistent with the stated policy of our supreme court to apply "the expanding doctrine of subrogation." Moreover, the essential elements of the doctrine are present here and it would effectuate a just resolution of all the parties' rights. The fact that it has not been previously applied in this exact factual situation is irrelevant.

In summary, we abide by the rule that, "[i]f an insurer pays a loss which is due to the wrongful act of another, [it] is subrogated to the rights of the insured \*\*\*. This is a rule independent of contract." *Central National Bank & Trust Co. v. Central Illinois Light Co.*

(1966), 65 Ill. App. 2d 287, 294, 212 N.E.2d 489. See also *American National Bank & Trust Co. v. Weyerhaeuser Co.* (7th Cir. 1982), 692 F.2d 455, 460 n.12 (noting difference recognized in Illinois between "legal" subrogation, which is grounded in equity and applied as a matter of law, and "conventional" subrogation, which is founded upon an express or implied agreement).

Lastly, we must address the issue of the ramification of Michael's settlement, and the trial court's dismissal, of the claims asserted against defendants Timothy and Richard Gotlund in counts I (negligence) and III (wilful and wanton conduct) of plaintiffs' complaint.

Relying on *Page v. Hibbard* (1987), 119 Ill. 2d 41, 518 N.E.2d 69, petitioner asserts that a hearing could be had to determine how any settlement was allocated amongst the various elements of damage for which Michael sought a recovery, which included medical and hospital expenses, in order to determine the portion of the settlement to which petitioner's right of subrogation would attach. However, before we may agree with petitioner, we must determine whether, in view of the settlement of counts II and III, petitioner still has a viable right of subrogation to the rights of plaintiff Michael against the Gotlunds for medical and hospital expenses paid by it.

■■ ■ A corollary of an insurer's subrogation to its insured's right of action against a tortfeasor is that the right of subrogation is extinguished if the insured settles with the tortfeasor and releases him from all liability. (*Tarzian v. West Bend Mutual Fire Insurance Co.* (1966), 74 Ill. App. 2d 314, 221 N.E.2d 293; *Sears, Sucsy & Co. v. Insurance Co. of North America* (N.D. Ill. 1974), 392 F. Supp. 398.) However, that rule obtains only where the tortfeasor or his insurance carrier had no knowledge of the insurer-subrogee's interest prior to the release. (*Home Insurance Co. v. Hertz Corp.* (1978), 71 Ill. 2d 210, 375 N.E.2d 115.) The record before us, which does not contain plaintiffs' settlement with the Gotlunds, does not permit resolution of this question. Given the equitable nature and purposes of the common-law right of subrogation, we believe it is in the interests of justice to remand this cause for a hearing to determine whether defendants or their insurer, if they had one, knew of petitioner's interest prior to their settlement with and release by plaintiffs. If they did not, petitioner has no viable right of subrogation to Michael's rights against them.

However, if the trial court determines that the Gotlunds did know of petitioner's claim, we order that it then hold a hearing to determine what portion of the settlement was allocated or is allocable to Michael's medical and hospital expenses and if that allocation was

proper. (*Cf. Page v. Hibbard* (1987), 119 Ill. 2d 41, 518 N.E.2d 69 (cause remanded for trial court's determination whether settlement amount allocated to plaintiff wife's loss of consortium claim, to which plaintiff husband's employer's statutory right of reimbursement did not attach, was proper).) Of course, petitioner's right of subrogation to Joyce's claim under the Dramshop Act (Ill. Rev. Stat. 1985, ch. 43, par. 135) for Michael's medical and hospital expenses, in count IV of the complaint, is still viable.

For all of the foregoing reasons, the order denying the petition to intervene of Loretto Hospital is reversed and the cause is remanded with instructions.

Reversed and remanded.

RIZZI and WHITE, JJ., concur.