# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Bank of New York v. Jurado*, 2012 IL App (1st) 112116**

| | |
|---|---|
| Appellate Court Caption | BANK OF NEW YORK, as Trustee for the Certificate Holders CWABS, Inc., Asset-backed Certificates, Series 2004-6, Plaintiff-Appellee, v. NANCY R. JURADO; REYNALDO JURADO; CITIZENS BANK ILLINOIS, N.A.; and LASALLE BANK, N.A.; Defendants (RBM Development, Inc., Defendant-Appellant). |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-2116 |
| Filed | September 21, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The counterclaim defendant filed in a foreclosure action seeking to enforce the mechanic's lien defendant had on the subject property was barred as untimely pursuant to the two-year limitations period in section 9 of the Mechanics Lien Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CH-04019; the Hon. Lisa R. Curcio, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Leon Zelechowski, of Leon Zelechowski, Ltd., of Chicago, for appellant.

John D. Burke, David J. Chroust, and Douglas Henning, all of Ice Miller LLP, of Chicago, and Joseph Herbas, of Fisher Shapiro LLC, of Bannockburn, for appellee.

Panel

JUSTICE HOWSE delivered the judgment of the court, with opinion.

Presiding Justice McBride and Justice Epstein concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant RBM Development, Inc., appeals from a circuit court order holding that RBM's counterclaim to enforce a mechanic's lien was time barred. For the reasons set forth below, we affirm the decision of the circuit court.

¶ 2                          BACKGROUND

¶ 3    Plaintiff Bank of New York (BONY) filed a complaint on February 13, 2007, in the circuit court of Cook County to foreclose on a mortgage for property located on Kenton Avenue in Lincolnwood.

¶ 4    In its complaint, BONY named RBM Development, Inc. (RBM), as a defendant, among others, by virtue of RBM's mechanic's lien on the property, recorded on October 12, 2006. BONY served its lawsuit upon Frederick W. Calcutt in Chicago, RBM's registered agent listed in the records of the Illinois Secretary of State.

¶ 5    BONY filed a motion for an order of default against RBM and other defendants on July 16, 2007. BONY stated it served RBM on February 21, 2007, and RBM failed to appear or answer. On the same day, the trial court issued an order finding RBM and the other defendants in default and entered an order for judgment of foreclosure and sale.

¶ 6    On April 10, 2008, RBM filed a motion to vacate the default judgment and for leave to intervene and file a counterclaim *instanter*. A copy of RBM's proposed counterclaim was attached to the motion. In the answer and counterclaim attached to the motion, RBM alleged it provided materials, equipment, services and labor in the amount of $428,500 to the owners of the Lincolnwood property. RBM completed the work under the contract on June 14, 2006, and subsequently recorded a mechanic's lien on the property for unpaid work. RBM claimed its lien is prior and superior to the mortgage owed to BONY.

¶ 7    In an order dated June 12, 2008, the trial court set the motion for an evidentiary hearing on August 4, 2008, and allowed the parties to pursue limited discovery.

¶ 8    On August 4, 2008, the trial court entered an order finding Calcutt did not have authority to serve as RBM's registered agent and therefore the court vacated the default judgment of

foreclosure as to RBM. The trial court gave RBM leave to file its answer and counterclaim by August 25, 2008.

¶ 9    RBM filed the answer and counterclaim on August 25, 2008. BONY filed a motion for summary judgment, pursuant to section 2-1005(c) of the Code of Civil Procedure (735 ILCS 5/2-1005(c) (West 2008)), on January 13, 2010. BONY alleged RBM failed to enforce its mechanic's lien within two years of completion of the work as required under section 9 of the Illinois Mechanics Lien Act (Act) (770 ILCS 60/9 (West 2008)). Since RBM's work was completed June 14, 2006, BONY claimed the deadline under the Act for RBM to foreclose on its mechanic's lien was June 14, 2008. BONY argued RBM's counterclaim was filed on August 25, 2008, after the deadline required by the Act, and is, therefore, unenforceable.

¶ 10    Section 9 of the Act provides, in part:

"If payment shall not be made to the contractor having a lien by virtue of this act of any amount due when the same becomes due, then such contractor may bring suit to enforce his lien in the circuit court in the county where the improvement is located ***. *** [A]ll lien claimants not made parties thereto may upon filing a petition to intervene become defendants and enforce their liens by counterclaim against all the parties to the suit; and the complaint shall not thereafter be dismissed as to any lien claimant, or as to the owner or owners of the premises without the consent of such lien claimant. *** Such suit shall be commenced or counterclaim filed within two years after the completion of the contract ***." 770 ILCS 60/9 (West 2008).

¶ 11    In its response to BONY's motion for summary judgment, RBM claimed it should not be penalized for its failure to meet the two-year deadline because: (1) RBM set forth its mechanic's lien claim in the motion for leave to file on April 10, 2008, two months before the two-year limitations period expired, but the trial court did not grant it leave to file its counterclaim within the two-year period because of its busy calendar; (2) BONY's act of contesting RBM's motion to vacate the default judgment caused a delay; and (3) BONY's service on Calcutt caused a delay.

¶ 12    In an order dated August 13, 2010, the trial court granted BONY's motion for summary judgment, finding RBM did not file a complaint to foreclose its mechanic's lien in the time required by the Act. The trial court stated:

"RBM correctly moved to vacate the default against it in the mortgage foreclosure in order to avoid foreclosure of any rights it had to the property. This was insufficient, however, to allow it to enforce its mechanics lien. No rule of law precluded RBM from filing its own complaint at any time within the two year period following completion of its work. Not having done so, and not having filed its counterclaim in the pending mortgage foreclosure lawsuit, RBM has forfeited its right to enforce its mechanics lien."

¶ 13    RBM filed this timely appeal of the trial court's order granting BONY's motion for summary judgment.

¶ 14                                    ANALYSIS

¶ 15    On appeal, RBM claims that the counterclaim attached to its motion to vacate BONY's

default judgment was filed before the two-year deadline required by section 9 of the Act (770 ILCS 60/9 (West 2008)). RBM argues the counterclaim attached to a motion to vacate and request for leave to file a counterclaim satisfied the two-year filing requirement of section 9 of the Act. RBM alleges the existence of the default foreclosure judgment against RBM placed it in the untenable situation where it had to get leave of court before filing the counterclaim and, therefore, the summary judgment for BONY should be reversed.

¶ 16    Summary judgment is proper if, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). Our review of the trial court's grant of summary judgment is *de novo*. *Illinois State Chamber of Commerce v. Filan*, 216 Ill. 2d 653, 661 (2005).

¶ 17    The issue before us is one of statutory construction. The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006). The language of a statute is the best means of determining legislative intent, and where the statutory language is clear and unambiguous, its plain meaning will be given effect. *People v. Ramirez*, 214 Ill. 2d 176, 179 (2005). We do not construe words and phrases of a statute in isolation; instead, all provisions of a statute are viewed as a whole. *In re Donald A.G.*, 221 Ill. 2d at 246. The construction of a statute is reviewed *de novo. People v. Delvillar*, 235 Ill. 2d 507, 517 (2009).

¶ 18    In support of the claim that it complied with section 9 of the Act, RBM cites *Wasilevich Construction Co. v. La Salle National Bank*, 222 Ill. App. 3d 927 (1991). In *Wasilevich*, sub-contractor Lyons filed a mechanic's lien for work on a construction project it had completed on October 4, 1988. *Wasilevich*, 222 Ill. App. 3d at 929. Shortly thereafter, Wasilevich filed a complaint for foreclosure of its own mechanic's lien on the construction project. However, Wasilevich omitted Lyons as a party-defendant.

¶ 19    On October 3, 1990, one day prior to the expiration of the two-year limitations period for perfecting Lyons' mechanic's lien, Lyons filed a petition for leave to intervene and also filed a counterclaim to enforce his mechanic's lien. Section 9 provided that nonparty lien claimants "may upon filing a petition to intervene become defendants and enforce their liens by counterclaim." (Internal quotation marks omitted.) *Id.* at 931. The hearing on Lyons' petition to intervene did not occur until October 25, 1990, three weeks after the two-year limitation period expired. *Id.* The trial court denied Lyons' petition as untimely. *Id.*

¶ 20    The appellate court reversed the trial court, finding that Lyons' intervention petition was indeed timely. The court noted that the issue in *Wasilevich* was not whether the counter-claim was timely filed–the parties agreed that the counterclaim to enforce the mechanic's lien was actually filed on October 3, 1988, one day prior to the expiration of the two-year limitations period. The issue before the *Wasilevich* court was whether a mechanic's lien intervenor-claimant satisfied the two-year limitation requirements of section 9 when it filed a petition for leave to intervene within two years but leave to file was not granted until after the two-year period elapsed.

¶ 21    The court determined that the plain language of the Act did not require leave to intervene

be granted within two years as long as the petition to intervene was *filed* within two years of the completion of the work. *Id.* at 931-32. Because the parties agreed the counterclaim was filed within two years, Lyons' action of filing the petition to intervene one day prior to the deadline fits within the plain language of the Act. *Id.*

¶ 22 Here, unlike *Wasilevich*, there is no agreement that RBM's counterclaim was filed within two years. Both parties agree that RBM's counterclaim was not filed until August 25, 2008, which was after the two-year limitations period expired. We note the motion to vacate and motion for leave in the record was file-stamped on April 10, 2008. However, the attached counterclaim is not file-stamped. The *Wasilevich* court did not hold that a counterclaim attached to a motion to vacate a default order is equivalent to a filing, because the court acknowledged that the counterclaim there was actually filed prior to the expiration of the limitations period, unlike the circumstances presented in this case.

¶ 23 Next, RBM claims that BONY's opposition to its motion to vacate, combined with the trial court's busy docket, resulted in the court delaying the hearing to a date past the two-year deadline. However, we cannot say BONY violated any law or rule of procedure in opposing RBM's motion to vacate. Additionally, there is no indication in the record that after RBM filed its motion to vacate on April 10, 2008, that RBM ever informed the trial court that its two-year deadline was approaching on June 14, 2008 or that an expedited hearing was needed. RBM claims that its only course of action once it learned of BONY's default judgment was to file a motion to vacate.

¶ 24 We agree that RBM took a proper course of action when it filed the motion to vacate the default judgment to protect its rights. However, we are not persuaded that this was the only course of action available. We recognize that the original judgment of foreclosure purported to extinguish RBM's lien. However, RBM had reason to believe the judgment was void, and the trial court eventually determined that to be the case. RBM could have filed its own case to foreclose the lien before the time elapsed because a void judgment could be attacked directly or collaterally. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102 (2002). The two cases could have been consolidated so there would be no duplication.

¶ 25 Section 9 of the Act provides that the counterclaim must be filed within two years of the completion of the work, not merely presented as an attachment. The arguments and authority presented by RBM to support its position in the trial court and on appeal are not persuasive. Accordingly, the judgment of the circuit court is affirmed.

¶ 26                                         CONCLUSION
¶ 27 For the foregoing reasons, we affirm the judgment of the trial court.

¶ 28 Affirmed.